UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARSON REAL ESTATE COMPANIES, LLC,

                         Plaintiff,                         Civil Action No.
                                                       10-CV-13966

vs.

                                                       HON. MARK A. GOLDSMITH

CONSTAR GROUP, INC., et al.,

                         Defendants.
_____/

**<u>OPINION AND ORDER (1) ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (2) OVERRULING PLAINTIFF'S OBJECTIONS, (3) DENYING PLAINTIFF'S MOTION TO REMAND, (4) GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL, and (5) GRANTING DEFENDANTS' MOTION TO TRANSFER THE CASE TO THE DISTRICT OF MARYLAND</u>**

**I. INTRODUCTION**

This matter is presently before the Court on three motions: Plaintiff Carson Real Estate Companies, LLC's motion to remand (Dkt. 6); Defendants' motion to dismiss, in part, Plaintiff's complaint (Dkt. 15); and Defendants' motion to transfer this action to the United States District Court for the District of Maryland (Dkt. 2). The Court referred these motions to Magistrate Judge Mona K. Majzoub (Dkts. 21 and 34), who issued a Report and Recommendation ("R&R") (Dkt. 35), to which Plaintiff filed objections (Dkt. 37). The Court reviews <u>de novo</u> those portions of the R&R to which a specific objection has been made. Fed. R. Civ. P. 72(b). Having reviewed Plaintiff's objections, the brief filed by Defendants in opposition (Dkt. 38), and Plaintiff's reply (Dkt. 40), this Court agrees with the Magistrate Judge's recommendations, as set forth in the R&R. Accordingly, the Court (1) accepts and adopts the Magistrate Judge's R&R as the findings and conclusions of the Court, subject to this Court's differing analysis in certain respects, as set forth below, (2) overrules Plaintiff's objections, (3) denies Plaintiff's motion to remand, (4) grants Defendants' motion for partial

dismissal, and (5) grants Defendants' motion to transfer this action to the United States District Court for the District of Maryland.

## II. BACKGROUND

This action arose out of a dispute between the parties regarding (i) Plaintiff's alleged unauthorized access to, and use of, certain website images and database information, and (ii) Defendants' alleged threats to Plaintiff in response. This dispute has spawned litigation initiated by Defendant CoStar Realty Information, Inc. ("CoStar Realty") in federal court in Maryland, as well as the instant suit, which had been originally filed in the Oakland County Circuit Court and subsequently removed to this Court. The facts set forth in this Opinion are drawn principally from the allegations set forth in the two complaints (Dkts. 1-2 and 1-3).

Defendants CoStar Group, Inc. and CoStar Realty are national providers of commercial real estate information services. They own and operate databases containing real estate information, including building photographs and property analyses, to which they license access for a fee. Plaintiff is involved in real estate investment and management.

CoStar Realty filed its federal court action in Maryland on August 27, 2010 against Carson Equities, f/k/a Carson Real Estate Company ("Carson Equities"), asserting claims for copyright infringement, fraud, and breach of contract. The gist of the claim is that Carson Equities utilized a current CoStar Realty customer – Friedman Real Estate Group ("Friedman") – to gain unauthorized access to the databases. The scheme allegedly was accomplished by Carson Equities inducing Friedman to provide the user name and password issued to Jason Tink, a joint employee of Friedman and Carson Equities. Thereafter, Carson Equities allegedly copied and distributed copyrighted materials. On October 15, 2010, Plaintiff in the present action was added as a defendant to the Maryland action.

After the filing of the Maryland action, Plaintiff filed the instant action on September 10, 2010, in the Oakland County Circuit Court, naming both CoStar entities and Michael

Weinstein, a CoStar employee.  The gist of the complaint in the instant action is that Plaintiff did nothing actionable.  It claims that in 2002, it jointly formed a company with Friedman – Premier Communities, LLC ("Premier") – for the purpose of pursuing certain business opportunities.  Friedman  signed a license agreement in 2005 with CoStar Realty for access to the CoStar databases.  In 2007, Friedman requested that CoStar Realty issue a password to Jason Tink, who, as a joint employee of Friedman and Plaintiff, provided services to Premier. Knowing of Tink's association with Plaintiff and Premier, CoStar issued a password to Tink. In January 2009, CoStar advised Tink that he would no longer be allowed access the databases unless Plaintiff set up its own account.  In April 2009, a new license agreement was entered into between Friedman and CoStar, but shortly thereafter, CoStar Realty advised Friedman that it may have violated the 2009 license agreement by allowing unauthorized access.  CoStar Realty also accused Plaintiff of unlawfully accessing the databases and threatened legal action if Plaintiff would not sign its own license agreement and pay a fee of $75,000.

Count I of the complaint in the instant action seeks a declaration that Tink's access to the database was authorized and did not violate the license agreements.  It also seeks a declaration that Plaintiff "did not obtain or use information on the CoStar Databases(s) or CoStar Web Site or otherwise take any action that would interfere with any rights or property interests of CoStar Realty or CoStar Group."  Count II seeks damages for falsely accusing Plaintiff of wrongfully accessing the database and threatening Plaintiff with civil and criminal penalties for alleged violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, which Plaintiff claims amounts to "unlawful business competition" and "restraint of trade." Count III alleges a conspiracy to engage in unlawful threats.  Count IV alleges unspecified, unlawful "concerted activities."

Defendants removed the instant action to this Court on the basis of federal question and diversity jurisdiction.   Although there is no express federal claim in the complaint, Defendants stated in their removal notice (Dkt. 1) that Plaintiff's request for declaratory relief was effectively a request to find that it had not violated the federal copyright laws, and that therefore this Court had jurisdiction under 28 U.S.C. § 1338(a), which confers exclusive jurisdiction for matters arising under the Copyright Act, 17 U.S.C. § 101 <u>et seq</u>.   Regarding diversity jurisdiction, the removal notice stated that complete diversity would be created if Defendant Weinstein's status as a Michigan citizen were disregarded, which it argued should be, because his joinder was a "sham."   Plaintiff then filed its motion to remand, under 28 U.S.C. § 1441, contending that there was no federal question jurisdiction and no diversity jurisdiction because the joinder of Defendant Weinstein was not fraudulent.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants filed a motion to dismiss the non-declaratory judgment claims.   Characterizing the Count II claims as an "extortion" claim and an "unfair competition" claim, Defendants argued that the facts alleged by Plaintiff do not state any such causes of action.   They also contended that the conspiracy and concerted activities claims should be dismissed pursuant to the intracorporate conspiracy doctrine.   Defendants also filed a motion to transfer, pursuant to 28 U.S.C. § 1404(a), arguing that the Maryland action was the first-filed action, and that the license agreements' forum selection clause and convenience of witnesses favor adjudication of this action in federal court in Maryland.

The Magistrate Judge agreed with Defendants' ultimate positions on the motions.   She found that there was federal question jurisdiction because Plaintiff's request for declaratory relief in the context of this case was a request to be found free of any copyright violation. R&R at 8-9.   Because she had found a basis for federal question jurisdiction, she concluded that the fraudulent joinder argument in connection with diversity jurisdiction was moot.   <u>Id</u>. at

4

9.  On the motion to dismiss, she found that, while the claims for civil extortion and unfair competition were cognizable claims under Michigan law, Plaintiff had failed to allege facts in the context of this case sufficient to defeat a motion to dismiss.  Id. at 9-11.  Finally, she found that the Maryland action was the first-filed action and that the balance of relevant factors counseled transferring the instant action to Maryland.  Id. at 11-13.

### III.  DISCUSSION

### A.  Motion to Remand

Removal is appropriate under 28 U.S.C. § 1441(a) if the district court would have had original jurisdiction of the action.   District courts have original jurisdiction, under 28 U.S.C. § 1331, of any civil actions "arising under the . . . laws . . . of the United States."  There is also a specific grant of jurisdiction to district courts pertaining to copyrights.  28 U.S.C. § 1338(a)  ("The district courts shall have original jurisdiction of any civil action under any Act of Congress relating to . . . copyrights . . .").  Indeed, such jurisdiction is exclusive.  Id.; Ritchie v. Williams, 395 F.3d 283, 285-286 (6th Cir. 2005).

Plaintiff argued in support of its remand motion that it has asserted no cause of action arising under federal law.  The Magistrate Judge rejected this argument, noting that Plaintiff had requested declaratory relief that it had violated no property rights of Defendants, which necessarily included a request for a ruling that it had not violated Defendants' rights under federal copyright law.

This Court agrees.  Although Plaintiff had not expressly requested a declaration that it had not violated any of Defendants' copyrights, the unqualified breadth of its request certainly encompassed Defendants' copyrights.  The prayer for relief in Count I broadly asked the Court to:

> [D]eclare and adjudge the parties' respective rights, including, but not necessarily limited to, as follows:

* * * *

5

> B.  Jason Tink's use of the information on the CoStar Database(s) and CoStar Web Site did not violate the terms of either the 2005 License Agreement or the 2009 License Agreement;
>
> C.  CRE did not obtain or use information on the CoStar Database(s) or CoStar Web Site or otherwise take any action that would interfere with <u>any rights or property interests</u> of CoStar Reality or CoStar Group.

Compl. at Count I, Prayer for Relief (emphasis added). Clearly, the unqualified language of Paragraph C – "any rights or property interests" – encompasses Defendants' copyrights.

Moreover, the context of the dispute between the parties unequivocally demonstrates that Plaintiff's complaint encompasses Defendants' copyrights.   Prior to any litigation, Defendants' counsel wrote Plaintiff, charging that its activities

> may give rise to various claims and causes of action under Federal and state law, including without limitation copyright infringement – with statutory damages of up to $150,000 per work infringed, (<u>we have already documented as many as 147 such copyright infringements by your company, and expect the total to reach into the hundreds</u>), breach of contract, fraud and civil and criminal violation of the Computer Fraud and Abuse Act.

6/29/09 letter (Dkt. 16-3) (emphasis in the original).  In addition, the express allegations of the Maryland complaint charged copyright infringement.   In fact, on the record in the Maryland action, Plaintiff's counsel, Mr. Robenstein, admitted that the issues in that suit and the present one were the same:

> THE COURT: I see. Now, are these suites [sic] basically – I know they're parallel, but do they address essentially the same issue?
>
> MR. RUBENSTEIN: They addressed essentially the same issues but involve different parties.
>
> * * * *
>
> THE COURT: I see.  But it's says basically the same thing.  It's just who wants to be named as plaintiff or defendant?
>
> MR. RUBENSTEIN: That is correct, Your Honor.

6

Objections at Ex. 1, Tab B, at 10-11.  Given the unqualified language utilized in the instant complaint, the copyright infringement accusations leading up to the filing of the instant complaint, and the judicial admissions of Plaintiff's counsel, it is simply disingenuous for Plaintiff to argue now that it has not sought to raise the question of Defendants' copyrights in this action.  This Court finds that that is precisely what Plaintiff has done.

Plaintiff argues that it is the "master of its pleading," and that under the "well-pleaded complaint rule" it was entitled to confine its state court action only to state law claims if it wished.  As a general proposition, Plaintiff is correct.  Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 9443-944 (6th Cir. 1994) ("The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action.").  While Plaintiff could have confined its complaint to state law claims only, Plaintiff failed to do that.  Instead, Plaintiff pled broadly, without limitation, seeking a judicial declaration that it had violated none of Defendants' property rights – which necessarily included Defendants' copyrights.[1]

By pleading in this fashion, Plaintiff's claim is effectively a garden-variety request for a declaration that Plaintiff has not violated federal law.  "Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."  Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 19 (1983).  Given Defendants' prior assertion of its rights under federal copyright laws – in pre-suit correspondence and in the coercive action in the Maryland

---

[1] Had Plaintiff not pled a declaratory judgment claim encompassing Defendants' copyrights, this Court would then be required to address the "complete preemption," including its interplay with the "well-pleaded complaint rule," and determine whether the nominal state law claims should be recharacterized as federal claims.  As discussed, infra at 10, the Court's disposition makes that analysis unnecessary.

federal district court that Defendants filed to enforce their alleged copyrights against Plaintiff – the declaratory relief claim asserted here falls within the heartland of declaratory claims for which there is unquestionably "arising under federal law" jurisdiction under 28 U.S.C. § 1331.  See id. at 19 n.19 ("federal courts have consistently adjudicated suits by alleged patent infringers to declare a patent invalid, on the theory that an infringement suit by the declaratory judgment defendant would raise a federal question over which the federal courts have exclusive jurisdiction").   Because the subject matter implicates the Copyright Act, jurisdiction exists under 28 U.S.C. § 1338(a), as well.

Plaintiff's attempt to minimize the declaratory relief aspect of its complaint is unavailing.  Plaintiff argues that the "crux of this case, including the request for declaratory relief," is whether the alleged use violated the license agreements.  Objections at 13.  What Plaintiff means by "crux of this case" is not free from doubt; but no matter how the argument is framed, it lacks merit.

If Plaintiff means by the use of the word "crux" that its primary, but not exclusive, declaratory claim is that there was no violation of the license agreements, the simple response is that any request for a declaration that there was no violation of Defendants' federally protected rights – even if not a primary claim – is sufficient to support federal question jurisdiction.   The removal statute makes clear that as long as a single claim has an independent basis for federal court jurisdiction, the entire case is removable.  28 U.S.C. § 1441(c).

To the extent Plaintiff may be claiming that it only sought a declaration regarding any violations under the licensing agreements, the prayer for relief belies that contention. Paragraph B addresses violations of the 2005 and 2009 licensing agreements.   Thus, Paragraph C must necessarily cover something beyond the licensing agreements.  Given that Defendants had unequivocally asserted their federally protected copyrights immediately prior

to the filing of the instant complaint, Plaintiff cannot seriously argue that its complaint only sought a declaration of rights regarding the licensing agreements.

To the extent Plaintiff may be suggesting that it has abandoned its request for a declaration broad enough to encompass Defendants' rights under federal copyright law, the Court notes that Plaintiff has made no such explicit statement in its motion to remand or in its Objections to the R&R. Nonetheless, Plaintiff's citation of <u>Alexander</u> in connection with its "crux of the case" argument suggests that Plaintiff may be making such an argument implicitly. If it is making such an argument, the Court rejects it because <u>Alexander</u> provides no support for Plaintiff. In that case, the defendant removed the case to federal court, even though plaintiff had asserted only state-law based discrimination claims after being denied employment. The district court found jurisdiction based on the reference in the complaint to benefit plans covered by ERISA. The Sixth Circuit reversed, holding that if the district court had reviewed the motion to remand it would have concluded that the plaintiff had abandoned any claim that he was a potential "participant" in an ERISA plan. However, the Sixth Circuit's instruction to look beyond the allegations in the complaint was in the special context of ERISA. The opinion stressed that a district court must look to the allegations of the complaint as of the time the removal notice is filed, but that an "independent inquiry" looking to later pleadings is appropriate where the issue of ERISA preemption must be addressed to determine whether there is federal court jurisdiction. 13 F.3d at 946-947. Outside the ERISA-preemption context, the hornbook rule is that a district court looks to the allegations of the complaint as of the time of removal. <u>Pullman Co. v. Jenkins</u>, 305 U.S. 534 (1939); <u>Cromwell v. Equicor-Equitable HCA Corp.</u>, 944 F.2d 1272, 1277 (6th Cir. 1991). Thus, in the context of the present case, the appropriate source for determining jurisdiction was the complaint, and any later abandonment of the implicit request for a ruling on Defendants'

rights under federal copyright law – even if it had been made in the motion to remand – would not be properly considered.[2]

As a consequence of the Court's finding that Plaintiff's complaint asserts at least one claim for which there is "federal question" jurisdiction, the preemption analysis undertaken by the Magistrate Judge is unnecessary.  In the briefing on the motion to remand, the parties had analyzed the doctrine of "complete preemption."  Under that doctrine, state law claims may be recharacterized as federal claims – supplying a basis for federal question jurisdiction – where federal law dominates a particular subject matter.  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64-65 (1987).  The Sixth Circuit has applied this doctrine in the copyright area, noting that Congress has indicated that "national uniformity" is necessary in this field. Ritchie, 395 F.3d at 286-287.  However, the complete preemption doctrine is unnecessary to the analysis in our case.  Given the Court's conclusion that Plaintiff has actually pled a federal claim by effectively seeking a declaration of rights under the copyright laws, there is no need to recharacterize any claims as federal.  See id. (undertaking preemption analysis because there was no independent basis for federal question jurisdiction).[3]

Accordingly, the Magistrate Judge was correct in recommending that Plaintiff's motion to remand be denied.

## B.  Motion to Dismiss

Defendants moved to dismiss Plaintiff's non-declaratory claims on the grounds that they failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  In evaluating a motion to dismiss pursuant to Rule 12(b)(6),

---

[2] Plaintiff also argues that the Magistrate Judge improperly focused on the prayer for declaratory relief, rather than the substantive allegations in the paragraphs that preceded it. However, the Court rejects the argument because Plaintiff has offered no authority that a federal court should ignore or minimize the prayer for relief and look only to substantive allegations in determining whether a federal claim has been asserted.

[3] Because the Court concludes that there is federal question jurisdiction, it need not address the issue of diversity jurisdiction and fraudulent joinder.

> [c]ourts must construe the complaint in the light most favorable to plaintiff and determine whether the complaint states a plausible claim for relief. However, the plaintiff must provide the grounds for its entitlement to relief, and that requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.  A plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  A plaintiff falls short if she pleads facts merely consistent with a defendant's liability or if the alleged facts do not permit the court to infer more than the mere possibility of misconduct.

Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (quotation marks, brackets, and citations omitted).

The Magistrate Judge recommended dismissal of the non-declaratory claims. Regarding the unfair competition claim, she reasoned that Michigan law requires that a plaintiff must be in competition with the defendant in order to state a claim for unfair competition.  Regarding the extortion claim, she reasoned that merely threatening to file a civil lawsuit if Plaintiff did not sign a license agreement did not amount to extortion. Because the underlying claims were flawed, she recommended dismissal of the conspiracy and concerted activity claims, as well.

This Court agrees that Michigan law generally requires that the parties be in competition in order to state a claim for unfair competition.  Good Housekeeping Shop v. Smitter, 236 N.W. 872, 873 (Mich. 1931) ("an essential point here is that, in order that there may be unfair competition, there must be actual competition, shown from specific instances or as a natural tendency of defendant's act").

Plaintiff objects to the R&R, on the theory that the Magistrate Judge overlooked the fact that unfair competition can be made out based on a practice being "harmful to the public."  Objections at 18. While the cases cited by Plaintiff note that unfair competition often involves harm to the public, they do not hold that competition is not required to establish an unfair competition claim.  Neither Clairol, Inc. v. Boston Discount Ctr. of Berkley, Inc., 608 F.2d 1114 (6th Cir. 1979), nor Revlon v. Regal Pharm., Inc., 29 F.R.D.

169 (E.D. Mich. 1961) stand for the proposition that Michigan law does not require competition to state a claim for unfair competition; in fact, in both cases, the rival parties were in competition.  In Clairol, the manufacturer of a woman's hair product sought an injunction against retailers who had sold a form of the hair product to individual customers, without the full labeling and instructions that were supposed to be furnished in direct consumer sales.  The district court's opinion and the opinion of the Court of Appeals both noted that the parties were in competition, and neither opinion held that competition was not a necessary element.[4]  In Revlon, a hair product manufacturer sued distributors, who were selling to retail stores for re-sale to individual consumers, a version of the product that was intended for salon-use only.  The court's opinion made no reference to whether the parties were in competition, but they bore the same relationship to each other as did the parties in Clairol, where the court had found the parties to be in competition.  In any case, Revlon does not discuss any exception to the general rule that competition is required to state a claim for unfair competition.   The Magistrate Judge's recommendation to dismiss the unfair competition claim is therefore appropriate.[5]

        The same is true with respect to her recommendation that the extortion claim be dismissed.  She reasoned that Michigan law recognizes a civil tort of extortion based on a

---

[4] In dictum, the opinions noted that a Michigan case had observed that "The tendency has been . . . in recent years, for courts to pull back somewhat from the rigid requirement which insisted that in order to amount to an infringement the parties had to be competitors . . ." Boron Oil Co. v. Callanan, 213 N.W.2d 836 (Mich. App. 1973).  However, Boron Oil made the statement in the context of noting that the general rule was that a plaintiff had to be in competition with a defendant to state a claim for unfair competition, but that  an exception exists where a plaintiff complains that the defendant is using plaintiff's trade name for an unrelated product or service. In our case, Plaintiff makes no such allegation of misappropriation of its trade name.  Thus, to the extent that an exception exists under Michigan law to the general principle that the tort of unfair competition requires competition between the parties, that exception would have no application here.

[5] Even if the tort of unfair competition does not require competition between the parties and could be satisfied by a showing of harm to the public, Plaintiff's complaint makes no such allegation of injury to the public.

violation of the criminal offense for extortion found in Mich. Comp. Laws § 750.213, but that the allegations in the complaint do not suffice to allege the elements of the tort.  The R&R cited: (i) Various Markets, Inc. v. Chase Manhattan Bank, N.A., 908 F. Supp. 459 (E.D. Mich. 1995), where the court held that threatening to file a lawsuit does not amount to civil extortion; and (ii) Advocacy Organization for Patients & Providers v. Auto Club Insurance Organization, 176 F.3d 315 (6th Cir. 1999), where the court held that plaintiff had not pled sufficient facts to support a claim that defendant's threat of criminal sanctions was made with malice.  These decisions provide ample support for dismissal of the extortion claim.

In Various Markets, plaintiff alleged that the defendant-bank had threatened plaintiff with legal action if sums claimed by the bank to be owing were not paid.  The court held that the mere threat of legal action did not amount to extortion.  It relied on Edwards v. Grisham, 64 N.W.2d 715 (Mich. 1954), which concluded that a defendant who had made illegal threats – to force plaintiff from a jobsite through illegal picketing – could be held liable in damages. The district court reasoned that, while Edwards did not expressly rely on the criminal extortion statute, it stood for the proposition that liability for a threat could only be sustained if the threat itself was illegal.  Given the absence of any reported Michigan decisions on civil extortion, it also cited to a North Carolina case with the same facts as alleged in Various Markets, where the court had held that merely threatening a lawsuit does not give rise to a civil extortion cause of action.

In this Court's view, Various Markets is a correct statement of Michigan law.  As Edwards teaches, the threat itself must be illegal to constitute an actionable threat.  Merely threatening to bring a lawsuit cannot suffice.  Otherwise, as the court noted in Various

<u>Markets</u>, every demand letter could potentially subject a claimant and the claimant's attorney to the charge of extortion.[6]

However, Plaintiff alleges more than a threat to file a civil action; it also claims that Defendants threatened "criminal penalties for allegedly violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030" unless Plaintiff entered into a license agreement and paid $75,000 to Defendants.  The R&R did not specifically address this aspect of the extortion claim, and, as <u>Advocacy Organization</u> points out, the threat of a criminal accusation may amount to civil extortion.   176 F.3d at 325.   Nonetheless, dismissal is still appropriate because Plaintiff's complaint fails to make sufficient allegations of malice.  As noted in <u>Advocacy Organization</u>, the civil tort requires allegations of malice.  <u>Id</u>. at 327.  In that case, the court found that there was no factual support for the claim that the defendant-auto insurers acted with malice when they sent letters to medical providers stating that continued billing of insureds might be a violation of the Michigan Collection Act.  The court contrasted the insurers' letters to the facts in <u>People v. Watson</u>, 11 N.W.2d 926 (Mich. 1943), where the defendant had threatened to accuse the extortion victim of having arranged an illegal abortion for the defendant after having impregnated her, when defendant had neither been pregnant nor undergone an abortion.  "<u>This</u> is a 'malicious' threat to accuse one publicly of a crime." 176 F.3d. at 327 (emphasis in original).  In the present case, Plaintiff alleges malice only in conclusory terms.  Compl. ¶ 60 ("Defendants illegally, maliciously and wrongfully conspired with one another with the intent to and for the illegal purpose of engaging in unlawful business practices, harassing CRE and threatening it with civil and criminal prosecution unless it enters into a license agreement with CoStar Realty and pays CoStar Realty over Seventy Five Thousand Dollars ($75,000.00).").  Such language is entirely barren of any

---

[6] Given the Court's conclusion, it need not address the <u>Noerr-Pennington</u> doctrine, invoked by Defendants to immunize pre-suit efforts to resolve this dispute without resort to litigation.

facts.    Under <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), it is woefully inadequate.
Accordingly, the extortion claim must be dismissed without prejudice.[7]

### C.  Motion to Transfer

The R&R also recommends transferring this action to the District of Maryland
pursuant to 28 U.S.C. § 1404(a).  For the reasons discussed below, this Court agrees with the
Magistrate Judge that transfer is appropriate.

Under § 1404(a), an action may be transferred "[f]or the convenience of parties and
witnesses, in the interest of justice."  The "the interest of justice" factor is an "extremely
important" consideration, which is to be "considered on its own":

> Indeed, a number of federal courts have considered this factor decisive –
> outweighing the other statutory factors – in ruling on a change of venue
> motion even though the convenience of the parties and witnesses pointed in
> a different direction.

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice &
Procedure § 3854, at 246-247 (3d ed. 2007).   In particular, transfer is warranted under §
1404(a)'s broad "interest of justice" reference when the transfer would prevent "multiplicity
of litigation as a result of a single transaction or event."  <u>Id</u>. at 250.  As the Supreme Court
has written:

> To permit a situation in which two cases involving precisely the same issues
> are simultaneously pending in different District Courts leads to the
> wastefulness of time, energy and money that § 1404(a) was designed to
> prevent.   Moreover, such a situation is conducive to a race of diligence
> among litigants for a trial in the District Court each prefers.

<u>Continental Grain Co. v. The FBL-585</u>, 364 U.S. 19, 26 (1960).  Although not conclusive,
"when two courts have concurrent jurisdiction over a dispute involving the same parties and
issues, as a general proposition the forum in which the first-filed action is lodged has
priority."  15 Wright, Miller & Cooper § 3854, at 267, 272-274.  <u>See also</u> <u>Zide Sport Shop of</u>

---

[7] This Court also agrees with the Magistrate Judge that Counts III and IV must be dismissed,
given the dismissal of the underlying torts.

Ohio, Inc. v. Ed Tobergte Assoc., Inc., 16 F. App'x 433, 437 (6th Cir. 2001) (when actions involving nearly identical parties and issues have been filed in two different district courts, "the court in which the first suit was filed should generally proceed to judgment").  Courts do not apply the first-to-file rule, however, "when the district of the first-filed suit appears to have been selected based on forum shopping, anticipatory conduct, or when other special circumstances justify giving priority to the second action."  15 Wright, Miller & Cooper § 3854, at 275.  See also Zide Sport Shop, 16 F. App'x at 437 ("District courts have the discretion to dispense with the first-to-file rule where equity so demands. . . . Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.")

The Court finds that transfer of the present matter to the District of Maryland is appropriate in the interest of justice pursuant to § 1404(a).  That court has already expressly determined, by written order, that the Maryland matter was the first-filed pursuant to the first-to-file rule and that, accordingly, that matter will proceed in the District of Maryland.   Order dated May 6, 2011 (Dkt. 32-1).  In accordance with the authorities discussed in the preceding paragraph, the first-to-file rule is operative – counseling transfer of the present action to the District of Maryland – unless equity demands otherwise.

Plaintiff does not argue that an exception to the first-to-file rule applies in this case. In other words, there has been no suggestion or showing that the Maryland forum was selected based on inequitable conduct, forum shopping, anticipatory conduct, bad faith, or the like.[8]  Moreover, transfer is especially appropriate in this case because Plaintiff's counsel has admitted on the record during a proceeding before the court in Maryland that the present case and the Maryland case "address[] essentially the same issues," Objections at Ex. 1, Tab B, at

---

[8] Plaintiff objects to the Magistrate Judge's recommendation that the case be transferred, arguing that "[t]he pending Maryland case is not a factor that should weigh in favor of transfer."  Objections at 19.  This argument is unpersuasive because it ignores the first-to-file rule and, in particular, the efficiencies that the rule was meant to advance.

10-11, and the court in Maryland has conclusively determined that the two cases involve the "same set of claims."   Order dated May 6, 2011.  In light of the substantial overlap between the two cases, proceeding in this Court would directly circumvent the Supreme Court's admonishment in <u>Continental Grain</u> that similar cases be tried in the same court to avoid "wastefulness of time, energy and money," and to avoid "a race of diligence among litigants for a trial in the District Court each prefers."  364 U.S. at 26.

Furthermore, the other § 1404 factors do not counsel retaining this case in Michigan. Several of Defendants' witnesses are located in Maryland, and Defendants' headquarters – a repository of documentary evidence – is in Washington, D.C., having recently been moved from its former Maryland site.  Notably, Maryland is the forum set forth in the forum selection clause contained in the license agreements that Plaintiff claims not to have violated. These factors confirm that there is no significant inconvenience that would override the preference the law establishes for the forum of the first-filed action.  For all these reasons, transfer is warranted.

## IV.  CONCLUSION

For the reasons stated above, it is ORDERED as follows:

1.  The R&R of the Magistrate Judge issued on June 30, 2011, is accepted and adopted as the findings and conclusions of the Court, subject to this Court's analysis above.

2.  Plaintiff's objections to the Magistrate Judge's R&R are overruled.

3.  Plaintiff's motion to remand (Dkt. 6) is denied.

4.  Defendants' motion for partial dismissal (Dkt. 15) is granted, and Counts II-IV are dismissed without prejudice.

5.  Defendants' motion to transfer this action to the United States District Court for the District of Maryland (Dkt. 2) is granted.

Dated:  September 16, 2011                       s/Mark A. Goldsmith
      Flint, Michigan                            MARK A. GOLDSMITH
                                     United States District Judge

### CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 16, 2011.

                                      s/Deborah J. Goltz
                                      DEBORAH J. GOLTZ
                                      Case Manager